Hillsborough
No. 87-083

## THE STATE OF NEW HAMPSHIRE

v.

## CARL VACHON

October 15, 1987

*Stephen E. Merrill,* attorney general (*Barbara R. Keshen,* assistant attorney general, on the brief), by brief for the State.

*Joanne Green,* assistant appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J. The defendant appeals his conviction in Superior Court (*Dalianis,* J.) on one charge of endangering the welfare of a child. RSA 639:3, I & III. He argues here that certain post-arrest statements made by him were the fruits of an unlawful arrest and were therefore erroneously admitted into evidence. We disagree and accordingly affirm.

On April 21, 1986, the victim, a fourteen-year-old female, was delivering newspapers on her after-school paper route in Milford when she encountered the defendant, Carl Vachon. Vachon lived in the neighborhood in the same household as Al Buskey, a friend of the victim. The evidence supports a finding that the defendant asked her to come to his house to talk about Al. The victim agreed, and went to the defendant's house after she had completed her route.

When the victim arrived at the Buskey residence, the defendant told her to go to the living room and sit down. The only piece of furniture in the living room was a mattress, since the occupants were in the process of moving. The defendant remained briefly in the kitchen, and then went into the living room. He again told the victim to sit, which she did. The defendant sat next to her on the mattress and began telling her about Al's thoughts of quitting school. He soon revealed his true intentions, however, and told her,

"I want you, and I want you now." She said no, whereupon the defendant said he wanted to "find something out," and he tried to kiss her. He then grabbed her in a "bear hug" and laid her down on the mattress. She tried to free herself, but he would not let her go. The defendant began fondling her breasts, attempting to reach under her shirt. He also attempted to place his hand in her pants, but she successfully resisted. The defendant finally let her up, and she ran to the door only to find it locked. She asked him to unlock it, and as he approached her, he placed his hand on her buttocks. He then unlocked the door.

The victim fled to the home of a friend in the neighborhood, Shannon Nutting, where she explained what had happened, and the police were called. Officer Douglas of the Milford Police Department arrived at the Nuttings' at approximately 6:00 p.m. There he observed the victim in a tearful embrace with her mother. He took the two aside and asked the victim to explain what had happened. She related the events to Officer Douglas, identifying the defendant as "Carl V."

Before sending the victim to the Milford Medical Center for an examination, Officer Douglas had her point out the house where the defendant lived. The officer went to the house, where he spoke with Mrs. Buskey. He asked her if "Carl" lived there, and she said yes, identifying the defendant as Carl Vachon. She further stated that he was not home at the time.

Officer Douglas then went to the medical center where he met Detective Sergeant Paul Conti, also of the Milford Police Department. Officer Douglas relayed to Detective Conti the information provided by the victim and the results of his own brief investigation. Officer Douglas explained that the girl was the possible victim of a sexual assault by a man named "Carl V.," whom Officer Douglas later determined to be Carl Vachon. Officer Douglas also stated that the defendant kissed the victim and fondled her breasts. He added that when she tried to leave the house the door was locked, although she managed to escape.

Based on this information, Detective Conti concluded that a felony had been committed, in that there was "some intent there to hold her against her will. . . . Some sort of restraint was made and some sort of attempt was made at [her] in a sexual way." The two officers returned to the Buskey residence where, in the parking lot, they encountered an adult male who identified himself as Carl Vachon. Detective Conti immediately placed the defendant under arrest for criminal restraint (RSA 633:2) and sexual assault (RSA 632-A:4). No warrant had been previously obtained.

The defendant was later charged by information with misdemeanor false imprisonment (RSA 633:3) and misdemeanor sexual assault (RSA 632-A:4), and by indictment with felony endangering the welfare of a child (RSA 639:3, I & III). Over defendant's objection, the charges were consolidated for trial. The defendant was acquitted by the jury on the misdemeanor counts, but was convicted on the felony count. He was sentenced under RSA 651:6, I(c), to an extended term of five to ten years in the State prison.

Prior to trial, a hearing was held on the defendant's motion to suppress certain post-arrest statements made to the police. Immediately upon his arrest, the defendant made the unsolicited remark, "I didn't touch her, I just kissed her." Later, at the police department, upon effective waiver of his *Miranda* rights, he signed an incriminating three-page statement. The defendant argued at the suppression hearing, and it is his sole contention here, that the statements were the fruits of a warrantless arrest unlawful under RSA 594:10, and therefore should be excluded from evidence.

The thrust of defendant's argument is that probable cause for arrest, if any, existed only for a misdemeanor, and that none of the circumstances justifying a warrantless misdemeanor arrest enumerated in RSA 594:10, I, were present in this case. The police, therefore, were required to obtain a warrant prior to arrest. The State counters that probable cause existed for a warrantless felony arrest, permissible under RSA 594:10, II(b), and that therefore the trial court properly denied suppression. We agree with the State.

██ A warrantless arrest by a police officer is generally lawful if the officer has "reasonable ground" to believe that the person arrested has committed a felony. RSA 594:10, II(b). It is well established that, in this context, "reasonable ground" means substantially the same thing as "probable cause." *State v. Rodrigue*, 127 N.H. 496, 498, 506 A.2d 299, 301 (1985); *State v. Hutton*, 108 N.H. 279, 287, 235 A.2d 117, 122 (1967). Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense. *State v. Rodrigue supra.*

██ The information relied upon by Detective Conti was sufficient to justify a warrantless felony arrest. That the defendant employed a ruse to lure the victim into his house and then locked the door led Detective Conti reasonably to believe that the victim was restrained against her will. *See* RSA 633:2. In addition, the information regarding the alleged sexual assault gave rise to a

reasonable belief that the fourteen-year-old victim was exposed to the risk of serious bodily injury. *Id.* The police possessed probable cause to arrest.

We add in conclusion that the defendant's subsequent indictment and conviction of a felony (endangering the welfare of a child) different from that which formed the basis for the arrest (criminal restraint) does not vitiate probable cause. The officer need only possess probable cause to believe that a felony had been committed. That felony need not be the subject of the subsequent conviction. *See* RSA 594:10, II(a), :13; *see also* R. MCNAMARA, 1 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 149, at 93 (1980).

*Affirmed.*

All concurred.