COMMONWEALTH *vs.* EDMUND FEDERICI.

Middlesex. May 6, 1998. - July 6, 1998.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Arrest. Search and Seizure,* Arrest, Probable cause. *Constitutional Law,* Arrest,
   Probable cause, Right of defendant in criminal case to act pro se. *Probable
   Cause. Practice, Criminal,* Instructions to jury, Voir dire, Capital case.
   *Insanity. Jury and Jurors.*

In a murder case, New Hampshire police officers had reasonable ground to
   believe that the defendant had committed a felony and their arrest of the
   defendant was lawful. [741-743]
At a murder trial, the record supported the judge's conclusion that the
   defendant was competent to stand trial, and the judge correctly declined,
   over defense counsel's objection, to instruct the jury on the defense of lack
   of criminal responsibility. [743-746]
At a murder trial the judge properly replaced the foreperson, who had inadvert-
   ently been given a folder of photographs not marked as exhibits, and
   properly declined to conduct individual voir dire of the remaining jurors,
   where the judge was warranted in concluding that none of the other jurors
   had seen the photographs. [746-747]

INDICTMENT found and returned in the Superior Court Depart-
ment on November 12, 1991.

Motions to suppress evidence were heard by *Peter M. Lau-
riat,* J., and the case was tried before *Margot Botsford,* J.

*Terry Scott Nagel* for the defendant.

*Geraldine C. Griffin,* Assistant District Attorney, for the Com-
monwealth.

LYNCH, J. The defendant was convicted of murder in the first
degree by reason of both deliberate premeditation and extreme
atrocity or cruelty. He claims error arising from (1) the denial of
his motion to suppress; (2) the judge's refusal to instruct the
jury on the defense of lack of criminal responsibility; and (3)
the judge's refusal to conduct an individual voir dire of the
jurors after the foreperson saw photographs of the crime scene
that were not in evidence. He also asks that we reduce the
verdict by exercising our power under G. L. c. 278, § 33E. We

affirm the conviction and conclude there is no basis for granting relief under G. L. c. 278, § 33E.

1. *Facts.* We summarize the facts as the jury could have found them in the light most favorable to the Commonwealth, reserving certain facts for discussion in conjunction with other issues. *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 153 (1997).

The defendant lived in Medford with his wife (victim) and their two young daughters. On October 26, 1991, the defendant and his children arrived at the house of his cousin in Windham, New Hampshire. The defendant told his cousin's son and his cousin's wife that he had a bad argument with the victim, had hit her, and possibly had hurt her. At the suggestion of his cousin's son the two men started to drive to Medford to check on the victim. The defendant changed his mind, and they returned to Windham whereupon his cousin's wife called the Medford police at 11:07 P.M.

Shortly thereafter the Medford police spoke with the Windham police who immediately dispatched two officers to the cousin's house. The Medford police, meanwhile, sent several officers to the defendant's house in Medford. The Medford officers discovered the victim's body on a bedroom floor; she appeared to have suffered massive head injuries. A claw hammer with the victim's blood type was found in a trash barrel, and a knife with human blood on it was found in the kitchen. An autopsy later revealed that the victim had been struck in the face and head seventeen times with a hammer by someone using severe force, causing seventeen lacerations and multiple fractures. The autopsy also found that the victim had been stabbed numerous times in the back, chest, and stomach.

The Windham police officers who had been sent to the defendant's cousin's house engaged the defendant in general conversation until they received word from the Medford police that they had a "critical incident" in Medford. The defendant then was arrested and brought to the Windham police station.

2. *Motion to suppress.* The defendant moved to suppress statements he made to the officers at his cousin's house and later at the police station. On the basis of the evidence at the suppression hearing, the judge found the following facts.

At the request of the Medford police, Windham police officers were dispatched to the cousin's house. When they arrived at approximately 11:15 P.M., the defendant was nervous and

distraught, and he said that he had a very bad argument with his wife and that she was not doing very well. One of the officers noticed blood on the defendant's shirt.

The Medford officers, in the meantime, had arrived at the defendant's house and discovered the victim's body on the second floor in a bedroom. At this point the Medford police began the process necessary to obtain warrants to search the house and to arrest the defendant; two officers were sent to Windham.

At 11:39 P.M., the defendant was first advised of his Miranda rights at his cousin's house in Windham. The defendant stated that he understood those rights, and, when he asked whether he was under arrest, he was told that he was not.

At 12:30 A.M. on October 27, 1991, the defendant was placed under arrest as a fugitive from justice in Massachusetts, and he was transported to the Windham police station. On arrival, the defendant was again given his Miranda rights. The defendant did not appear to be under the influence of drugs or alcohol.

At about 1:30 A.M. the Medford officers arrived in Windham and began questioning the defendant after again advising him of his Miranda rights. Eventually the defendant told the officers that he had struck his wife on the head with a hammer one or two times earlier that evening. At about 3:30 A.M., the defendant stated that he might need a lawyer, and the officers stopped the interview.

The defendant was booked at the Windham police station at about 3:40 A.M. on a charge of "fugitive from justice." The defendant's bloodied clothing was seized and he was then transferred to the Rockingham County jail in New Hampshire.

The defendant's suppression motion was based on his contention that his arrest in New Hampshire as a fugitive from justice was unlawful because at the time of his arrest he had not been charged with a crime in Massachusetts, nor had an arrest warrant issued against him, and thus his arrest was unlawful.

The validity of the defendant's arrest is determined by the law of New Hampshire, the State where the arrest was made. *Commonwealth* v. *Gullick*, 386 Mass. 278, 281 (1982), citing *United States* v. *DiRe*, 332 U.S. 581, 589 (1948). Under New Hampshire law, a warrantless arrest on a felony charge is lawful if the officer had reasonable ground to believe that the suspect has committed a felony. See N.H. Rev. Stat. Ann. § 594:10

(1986); *State* v. *Vachon*, 130 N.H. 37 (1987). In New Hampshire it is "well established" that "reasonable ground" to believe that a person has committed a felony means substantially the same thing as "probable cause." *Id.* at 40.

Because the New Hampshire officers had reasonable ground to believe that the defendant had committed a felony at the time of his arrest, it makes no difference that he was arrested as a fugitive from justice,[1] since an arrest is lawful even though the officer may have based the arrest on an improper or inadequate offense. See N.H. Rev. Stat. Ann. § 594:13; *State* v. *McBreairty*, 697 A.2d 495, 497 (N.H. 1997). "Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense." *State* v. *Brown*, 138 N.H. 407, 409 (1994), quoting *State* v. *Vachon*, *supra*. There was probable cause for the officers to believe the defendant had committed a felony. The officers observed blood on the defendant's clothing. He appeared agitated and nervous. He told them something bad had happened to his wife and that he had left her on the floor of her bedroom. See *State* v. *Vandebogart*, 139 N.H. 145, 163-164 (1994) (victim missing for several hours, defendant acting suspiciously). They were also aware that the defendant's visit to New Hampshire was unexpected and that he had told his cousin's son that he had hurt his wife by hitting her with a hammer. This evidence provided a reasonable basis for the officers to believe that the defendant had, at the very least, assaulted his wife with a deadly weapon.[2]

3. *Defense strategy.*[3] The defendant argues that the judge erred in failing to instruct the jury on the defense of lack of

[1] New Hampshire has never distinguished its probable cause standard under its State Constitution from the Federal standard. *State* v. *Chaloux*, 130 N.H. 809, 812 (1988). Accordingly, if the defendant's arrest was lawful under the Federal Constitution, then the requirements of the New Hampshire Constitution are met.

[2] The defendant argues that the "reasonable ground" exception does not apply to an arrest for extraterritorial crimes because, he contends, the "Fugitive from Justice Act" would be "swallow[ed] whole." He cites no support for this contention and we decline to accept it.

[3] For convenience we adopt the terminology used by the parties and refer to the issue of the lack of criminal responsibility as a defense. Of course, when lack of criminal responsibility is raised by the evidence, it is the Commonwealth's obligation to prove the absence of a mental disease or defect

criminal responsibility even though the defendant personally opposed giving such an instruction. The defendant argues that, under art. 12 of the Massachusetts Declaration of Rights, his trial counsel had complete control over the decision whether to raise the issue of lack of criminal responsibility, and, even if that is not the general rule, before the defendant can go against his counsel's wishes, the judge must determine that he is competent and that the defendant's decision is knowing and voluntary. We disagree.

While we have never squarely addressed this issue, we have noted the importance of protecting the defendant's autonomy in decisions relating to his defense. See *Commonwealth* v. *Martin*, 425 Mass. 718, 721 (1997). Even in the face of the "obvious truth that the average defendant lacks the skill necessary to protect oneself in a criminal proceeding," the United States Constitution and the Massachusetts Constitution protect a defendant's right to proceed pro se because "it is the defendant who must suffer the personal consequences of a conviction." *Commonwealth* v. *Martin, supra.* See *Commonwealth* v. *Jackson*, 419 Mass. 716, 719 (1995). "It is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' " *Commonwealth* v. *Martin, supra* at 721, quoting *Faretta* v. *California*, 422 U.S. 806, 834 (1975). A defendant's constitutional right to proceed pro se is protected "even in cases where the accused is harming himself by insisting on conducting his own defense" because "respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice 'with eyes open.' " *Commonwealth* v. *Martin, supra* at 721, quoting *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47, 52 (1974). We see no reason to afford lesser protection to the defendant's choice not to label himself as "criminally insane" where the defendant has been found competent and has been fully advised beforehand of the consequences of his actions by both defense

beyond a reasonable doubt. See *Commonwealth* v. *Goudreau*, 422 Mass. 731, 735 (1996).

counsel and the judge.[4]

The defendant also argues that, even if the decision to assert the defense rests with him, the judge must first determine that he is competent to do so and that the decision is knowing and voluntary. The defendant was evaluated for competency on four separate occasions, and on the basis of these evaluations the judge found the defendant competent each time. The judge's own observations of the defendant at trial and during numerous colloquies support her conclusion that the defendant was competent. The defendant's own statements throughout the trial support the conclusion that he maintained, at the very least, a working knowledge of the legal process. There was an ample basis to support the judge's conclusion that the defendant was competent to stand trial and that inferentially his waiver was both voluntary and intelligent. *Commonwealth* v. *Hung Tan Vo, ante* 464, 468-469 (1998).

The defendant made it clear to the judge and defense counsel that he did not desire to raise the issue of insanity. Throughout the trial, the defendant opposed raising the issue, even though he was advised of defense counsel's belief that this presented his best opportunity to get a reduced sentence. The defendant vehemently protested any suggestion that he had killed the victim. At the close of the evidence, after the defendant declined the judge's invitation for an instruction on criminal responsibil-

---

[4]The majority of States honor a competent defendant's choice to forgo a defense strategy that asserts, in any way, that he or she was not guilty of the crime charged by reason of insanity — even over defense counsel's objections. See, e.g., *United States* v. *Marble,* 940 F.2d 1543, 1547-1548 (D.C. Cir. 1991) (court must honor competent defendant's decision not to raise insanity defense); *People* v. *Geddes,* 1 Cal. App. 4th 448, 453 (1991) (whether to assert defense based on insanity is a "personal [decision]" for competent defendant despite defense counsel's disagreement); *State* v. *Lowenfield,* 495 So. 2d 1245, 1252 (La. 1985), cert. denied, 476 U.S. 1153 (1986) (defense counsel must acquiesce to competent defendant's informed decision to forgo insanity defense); *Treece* v. *State,* 313 Md. 665 (1988) (defense counsel must honor competent defendant's choice); *State* v. *Khan,* 175 N.J. Super. 72, 82 (1980) (competent defendant permitted to forgo defense based on insanity); *State* v. *Jones,* 99 Wash. 2d 735, 742 (1983) (concluding respect for defendant's autonomy requires that individual competent defendant determine whether to assert plea). The minority position holds that, where there is a conflict between a competent defendant and defense counsel, the decision to assert or to reject the insanity defense rests with defense counsel, as a matter of defense strategy. *People* v. *Anderson,* 266 Ill. App. 3d 947, 956-957 (1994), cert. denied, 516 U.S. 834 (1995).

ity, the judge ordered a fourth competency evaluation. After that evaluation, the judge again found that the defendant remained competent.

Shortly before closing arguments, the judge asked the defendant if he wanted an insanity instruction. The defendant also discussed the matter with defense counsel. The judge ruled that she would not instruct on the insanity defense over the defendant's objection, and defense counsel noted his objection.

In these circumstances the judge had no obligation to do more and was entitled to rely on the defendant's refusal to present a defense of insanity. The judge properly found that the defendant had the ability to assist and to consult with counsel in the preparation of his defense, and that he had a rational understanding of the consequences of his decision.[5]

4. *Photographs.* While the jurors were deliberating, the foreperson opened a box of exhibits, which contained a folder of photographs not marked as exhibits.

The judge found that none of the other jurors had seen any of the unmarked photographs and replaced the foreperson with an alternate juror. She denied the defense counsel's motion for an individual voir dire of the remaining jurors to determine whether they had seen the photographs.

The judge then addressed the jury as follows:

> "First of all, my understanding is no one but [the fore-person] saw any of the contents of the exhibit for identification. *If that is not correct, if there is anybody else who did, I would ask that person or those persons, when you go back to the jury room, let a court officer know immediately and bring that to my attention.* But, for the moment, I will assume that.
>
> "Second, I just wanted to say, in line with what I said

---

[5]We note the defendant's argument that a higher degree of competence should be required before the defendant may make a valid waiver of the insanity defense. The defendant argues for the application of the standard used for determining whether a criminal defendant can waive certain constitutional rights, see *Commonwealth* v. *L'Abbe*, 421 Mass. 262 (1995), that would require the Commonwealth to prove that he "knowingly, voluntarily and intelligently" waived the insanity defense. We need not address this issue here where there is an adequate demonstration on the record that the defendant's decision was knowing, voluntary, and intelligent. We note that some courts have rejected the same argument. See *State* v. *Woodland*, 945 P.2d 665, 668-669 (Utah 1997); *State* v. *Davignon*, 152 Vt. 209, 219 (1989).

before, that when you continue your deliberations, obviously you must focus on the evidence that was before you in the form of testimony and exhibits and only that evidence. I would ask that the question of exhibits for identification not be discussed at all as any part of your deliberations." (Emphasis added.)

The determination of potential juror prejudice is a matter within the sound discretion of the trial judge. *Commonwealth* v. *Samuel*, 398 Mass. 93, 96 (1986). G. L. c. 234, §§ 26B, 28. The judge is not required to conduct an individual voir dire unless there exists a "substantial risk of extraneous influences on the jury." *Commonwealth* v. *Kendrick*, 404 Mass. 298, 303 (1989), quoting *Commonwealth* v. *Boyer*, 400 Mass. 52, 55 (1987).

The record demonstrates that the judge was warranted in concluding that none of the other jurors had seen the photographs and thus a "serious question of possible prejudice" did not exist such as to require individual voir dire of the remaining jurors. *Commonwealth* v. *Costa*, 414 Mass. 618, 630 (1993). *Commonwealth* v. *Jackson*, 376 Mass. 790, 800 (1978). See *Commonwealth* v. *Trapp*, 423 Mass. 356, 362-363, cert. denied, 519 U.S. 1045 (1996) (judge properly questioned single juror exposed to extraneous information to determine whether he shared knowledge with other jurors); *Commonwealth* v. *Tanner*, 417 Mass. 1, 5 (1994) (weight given to judge's discretionary conclusion that juror need not be dismissed). The defendant has not demonstrated that individual questioning would have furnished a different result than the collective questioning. See *Commonwealth* v. *Costa, supra*; *Commonwealth* v. *Kendrick, supra* at 303. We conclude that the judge acted within her discretion.

5. *General Laws c. 278, § 33E.* In addition to the arguments raised by the defendant, we have reviewed the entire record pursuant to G. L. c. 278, § 33E, and we conclude that a reduction in the verdict or a new trial is not appropriate.

*Judgment affirmed.*