Lattime v. Seabrook, et al.        CV-98-181-M    07/12/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Chastity Lattime,
     Plaintiff

     v.                                    Civil No. 98-181-M

Town of Seabrook,
Seabrook Police Department,
and Robert Granlund,
     Defendants


**O R D E R**


Plaintiff Chastity Lattime brought this action against the Town of Seabrook ("Town"), Seabrook Police Department ("Department"), and Sgt. Robert Granlund alleging violations of 42 U.S.C. § 1983 and New Hampshire law in connection with her March 8, 1995, arrest for robbery, theft by unauthorized taking, and criminal use of aerosol self-defense spray.  The plaintiff's writ[1] alleges seven counts applicable to the various defendants as noted: (1) False Arrest/Illegal Seizure/Battery and (2) Breach of Duty to Investigate, against the individual defendant; (3) Unconstitutional Custom, Policy and/or Official Act against Defendant Town of Seabrook and its Seabrook Police Department; (4) Negligent Hiring, Training and Supervision, against the Town; (5) Pendant State Law Claim of Vicarious Liability, against the Town and its police department; and claims for (6) Enhanced Damages and (7) Punitive Damages, against the individual

---

[1]The action was originally brought in state court and then removed to this court pursuant to 28 U.S.C. §§ 1441 and 1446.

defendant.  The defendants move for summary judgment on all counts.

Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor.  DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial.  Id. (quoting Anderson v.

2

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

At approximately 3:42 p.m. on March 8, 1995, Defendant Granlund and Sgt. Preston of the Seabrook Police Department were dispatched to 56 Carolyn Avenue, Seabrook, New Hampshire to investigate an alleged assault. Once there, Defendant Granlund observed the victim, Cindy Andrews, being treated by Emergency Medical Technicians for exposure to Oleo Capscium spray, also known as "pepper spray." Sergeant Granlund also observed that Andrews' skin and hair had an orange tint, which Granlund, having been trained in the effects of Oleo Capscium spray, knew to be consistent with recent exposure to it.

Andrews gave Sergeant Granlund an account of the assault, which, in relevant part, follows. Andrews had been driving down Carolyn Avenue when two women she did not recognize yelled at her to stop. She backed up to speak to the women, who stated they were lost and looking for Pine Street. She then saw plaintiff, whom she knew, emerge from behind the two women. As Andrews put her car in gear to leave, plaintiff sprayed her with a chemical,

3

reached into the car, grabbed her by the hair and pulled very hard. Andrews put her car in park, and managed to get out. She ran toward a mobile home. The two women chased her, punching and kicking her in the process. Plaintiff told the women they should kill Andrews, whereupon the women told Andrews they were not through with her yet. Andrews reached the mobile home and, when an elderly gentleman came to the door, her attackers fled.

Andrews told Defendant Granlund that she believed plaintiff stole $200 from her pocketbook while assaulting her. She also told Sergeant Granlund that she believed the necklace she was wearing prior to the assault had been ripped from her neck while plaintiff was pulling her hair. Granlund observed a large amount of loose hair falling from Andrews' scalp and a reddening of her face, which he thought to be consistent not only with having been sprayed, but also with having been punched or kicked, although he saw no blood. He also observed a small nick on Andrews' neck and a reddening from one side of her neck to the other along the line on which a necklace would rest. Granlund was aware of prior disputes between the plaintiff and Andrews, and therefore believed that Andrews' identification of the plaintiff was reliable and that a motive existed for the assault.

Andrews went to the police station and gave written statement, declaring that plaintiff "grabbed my pocket book and took $200.00 dollars." Granlund applied for an arrest warrant and prepared complaints against plaintiff charging robbery, in violation of N.H. Rev. Stat. Ann. § 636:1; theft by unauthorized

4

taking, in violation of N.H. Rev. Stat. Ann. § 637:3; and criminal use of an aerosol self-defense spray weapon, in violation of N.H. Rev. Stat. Ann. § 159:23. An arrest warrant was issued the same day.

At approximately 5:46 p.m. on March 8, 1995, Sergeant Granlund and another officer arrested plaintiff at her residence. Plaintiff was informed of the charges against her, transported to the police station and was administratively processed. Plaintiff denied committing the crimes with which she was charged, offered an alibi, and gave the names of witnesses who could support her alibi. Plaintiff alleges that she offered, to no avail, to let the officers inspect her can of pepper spray and search her vehicle, and she offered to take a lie detector test. Plaintiff states that she was in custody from 5:46 p.m. on March 8, 1995, until the evening of March 9, 1995.

Sergeant Granlund and others continued the investigation on the evening on March 8 and thereafter. The victim was reinterviewed and another written statement was obtained from her. Plaintiff's alibi witnesses and others were also interviewed. The charges were eventually nol prossed on April 12, 1995.

## Discussion

Plaintiff's federal claims are brought under 42 U.S.C. § 1983, which subjects to civil liability any person who, acting under color of state law, deprives a United States citizen or any other person within the jurisdiction of the United States of "any

5

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983 (West Supp. 1999). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979). Plaintiff alleges that she was deprived of her right under the Fourth and Fourteenth Amendments to be free from unreasonable arrest, or seizure, specifically, from arrest and seizure made without probable cause.

Defendants argue that they are entitled to summary judgment because Defendant Granlund had probable cause to arrest plaintiff for the crimes of robbery and theft by unauthorized taking. While not conceding the point, defendants focus on the robbery and theft by unauthorized taking charges to counter plaintiff's argument that her arrest relating to criminal use of an aerosol self-defense spray was unlawful and without probable cause because the statute making such conduct criminal did not become effective until July 1, 1995, after plaintiff was arrested. Defendants argue that because plaintiff was arrested for several offenses, Defendant Granlund is not liable for unlawful arrest if he had probable cause with respect to any one of the offenses. The court agrees, and will therefore address only the robbery and theft by unauthorized taking grounds for plaintiff's arrest. See Dowling v. City of Philadelphia, 855 F.2d 136, 142 n.7 (3d Cir. 1998) (finding consideration of whether probable cause existed

6

for arrest for criminal conspiracy unnecessary where there was probable cause to arrest for defiant trespass).

Probable cause to arrest exists when "the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964); see also State v. Vachon, 130 N.H. 37, 40 (1987). With respect to the offense of theft by unauthorized taking, New Hampshire law at the time of plaintiff's arrest provided:

> I.  A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

N.H. Rev. Stat. Ann. § 637:3, I (1996).

With respect to the offense of robbery, New Hampshire law at the time of plaintiff's arrest provided:

> I.  A person commits the offense of robbery if, in the course of committing a theft, he
>         (a) Uses physical force on the person of another and such person is aware of such force; or
>         (b) Threatens another with or purposely puts him in fear of immediate use of physical force.

N.H. Rev. Stat. Ann. § 636:1, I (1996).


At the time Defendant Granlund applied for a warrant for plaintiff's arrest, he had been told by the victim that the plaintiff had sprayed her in the face with a debilitating and painful chemical spray, had reached into her car and pulled her hair, and while physically assaulting her, had stolen $200

7

dollars from her pocketbook and ripped a necklace from her neck. Defendant Granlund observed a number of corroborating details on the victim's person including an orange tint to her skin and hair, a large amount of loose hair falling out of her scalp, and a nick on her neck and reddening along the line where a necklace would rest. Defendant Granlund reasonably believed that the victim could identify the plaintiff as he knew the two had been involved in disputes in the past. Defendant Granlund also reasonably thought that the prior disputes between the victim and the plaintiff could have provided a motive for the attack.

Plaintiff argues that the foregoing information did not support a finding of probable cause because the information was not reasonably trustworthy. First, plaintiff argues that Defendant Granlund could not have relied on information provided by the victim because "Andrews was known to the police as a person with credibility problems." (Pl.'s Br. at 6.) The only evidence plaintiff cites to support this statement is the following notation by an unidentified police officer in a supplementary investigation report dated March 22, 1995:

> In essence, at this juncture, we have a victim who absolutely IDs LATTIME as her assailant and GERRISH and a juvenile female – both friends of LATTIME's who state that it wasn't LATTIME – it was GERRISH. GERRISH and LATTIME have been known to this P.D. as well as ANDREWS. There is a distinct credibility problem with all of them.

The court will assume that read in the light most favorable to plaintiff, as is required on a motion for summary judgment, this notation could be construed to mean that the victim was

8

known to the police department, prior to this incident, as a person with credibility problems.[2]  However, even if Defendant Granlund knew this to be the case, he still had probable cause to seek an arrest warrant as his independent observations corroborated much of the victim's story.  Cf. United States v. Humphreys, 982 F.2d 254, 258-59 (8th Cir. 1992) (noting that while defendant "may believe that the informants lacked credibility, where the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause.")  Under the circumstances, a reasonably prudent officer in Granlund's position could have believed that the charged offenses had been committed and further, could have concluded that plaintiff committed them.  The alternatives would be to believe either that the victim inflicted the injuries on herself in order to cause plaintiff's arrest and prosecution or that the victim was assaulted as described but, rather than assist in the apprehension of the actual attacker, chose instead to accuse the plaintiff.  A reasonably prudent officer could rationally discount the alternative explanations as improbable and accepted and acted on the victim's account.

Plaintiff also argues that the police had reason to question the victim's reliability because on the evening on March 8, 1995,

---

[2]An at least equally plausible reading is that subsequent investigation of the incident at issue revealed credibility problems specifically regarding this incident with all of the involved parties.

she contradicted her earlier statements by saying that she could not identify who stole her money or ripped the necklace off her neck because she was being assaulted and could not see due to the Oleo Capscium spray. This statement, however, was made after plaintiff's arrest. It does not negate or diminish the probable cause that existed before the arrest.

Plaintiff also argues, however, that once the police knew of the victim's uncertainty as to the identity of the thief, the charges against plaintiff should have been dismissed. To the extent this argument advances a malicious prosecution theory, the court notes that plaintiff's writ does not allege a malicious prosecution claim. To the extent the argument challenges plaintiff's continued detention on the ground that probable cause had dissipated, it fails on the facts of this case. The First Circuit Court of Appeals has held:

> [A] police officer's initial finding of probable cause justifies not only arrest but a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate. Once the arrest has been made, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released. Thus, although a police officer certainly has the discretion to release an arrestee immediately in light of certain post-arrest circumstances giving rise to doubts about the initial probable cause finding, we impose no absolute duty to do so absent the post-arrest discovery of evidence negating, beyond any reasonable doubt, the initial probable cause finding.

Thompson v. Olson, 798 F.2d 552, 553 (1st Cir. 1985) (state law false imprisonment claim).

The post-arrest evidence here did not negate Defendant Granlund's initial finding of probable cause beyond a reasonable

doubt.  In her interview on the evening of March 9, 1995, the victim positively identified plaintiff from a photo lineup as the person who sprayed and assaulted her.  She also said that because she was being assaulted and could not see due to the Oleo Capscium spray, she could not identify who took her necklace or money.  Nevertheless, plaintiff was still one of only three potential suspects and reasonable inferences pointed to her as the actual thief, and in any event an active participant and accomplice.  The victim's consistent testimony indicated that the plaintiff reached into the victim's car while assaulting her.  There is no indication that either of the other women ever entered the victim's car.[3]  Rather, they pursued the victim as she ran away.  Also, at the time of the March 8 interview, the victim appears to have identified only plaintiff as having pulled her hair, and stated her belief that the necklace had been ripped off while her hair was being pulled.[4]  In light of the victim's other testimony, her post-arrest inability to specifically identify plaintiff as the person who stole her money and necklace did not negate, beyond a reasonable doubt, the initial finding of probable cause.  Indeed it did not cast any doubt on plaintiff's

---

[3]The pocket book was retrieved from the car after the assault by the elderly gentleman to whose home the victim had fled.  (Andrew's March 9 written statement at 3.)

[4]Later, in her March 9 written statement, the victim stated that the other two women also pulled her hair while chasing her, but stated that "[w]hen [plaintiff] pulled my hair she pulled my gold chain off and took it."  (Andrew's March 9 written statement at 3.)

participation as the principal, or aider and abetter, in the commission of the charged offenses.

Plaintiff also argues in her brief that the police provided false information to the Hampton District Court on March 9, 1995, by neglecting to include in the offer of proof that the victim could not identify who stole her necklace and money. This argument is not only unsupported,[5] it is irrelevant to any of plaintiff's causes of action. She has not brought a claim for malicious prosecution and the officer who testified at the hearing is not a defendant in this case, and the reported circumstances certainly described a joint attack and robbery by three people, including the plaintiff.

Count II of plaintiff's writ alleges that Defendant Granlund breached a duty to investigate. Plaintiff contends that in light of the victim's credibility problems and inconsistencies in her testimony, Defendant Granlund had a duty to conduct further investigation before arresting her. Specifically, plaintiff faults Defendant Granlund for failing to interview the victim in detail until after the arrest, failing to interview plaintiff's alibi witnesses, and failure to examine basic evidence such as plaintiff's can of pepper spray.

_____

[5]Plaintiff has offered no evidence of what transpired at the March 9, 1995, hearing other than the largely illegible back of the robbery complaint, which notes that Officer Frost testified, inter alia, that the victim picked the plaintiff out in a photo lineup. The victim did pick plaintiff out of a photo lineup as the person who sprayed and assaulted her. There is no evidence that this fact was misrepresented to the court.

The court has previously discussed the victim's alleged credibility problems and notes that the inconsistencies in the victim's testimony noted by plaintiff, such as whether the car was in drive or reverse at the time of the assault, are trivial. In addition, the court finds meritless plaintiff's argument that Defendant Granlund failed to conduct an adequate pre-arrest investigation. "[T]he probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before [making an arrest]." Romero v. Fay, 45 F.3d 1472, 1477 (10th Cir. 1995) (summarizing holdings of cases cited by plaintiff). Defendant Granlund's report indicates that he had taken a verbal statement from the victim as well as brief statements from the elderly couple in whose home the victim had taken refuge. These statements, together with his own observations of the victim justified his belief that a crime had been committed and provided him with probable cause to seek an arrest warrant. There is no indication that Defendant Granlund's interview of the victim was incomplete or insufficient to establish probable cause, and the court will not infer that it was simply because the police later interviewed her again.

Nor was Defendant Granlund required to inspect, prior to arresting plaintiff, evidence she claimed would be exculpatory. "[T]he police . . . have no constitutional duty to keep investigating a crime once they have established probable cause."

Kompare v. Stein, 801 F.2d 883, 890 (7th Cir. 1986); see also

Franco-de Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989)

(citing Kompare).  Finally, Defendant Granlund had no duty to

interview plaintiff's proffered alibi witnesses prior to making

the arrest.

> Once Defendant [Granlund] concluded based on the facts
> and information known to him that probable cause
> existed to arrest [p]laintiff . . . , his failure to
> question [p]laintiff's alibi witnesses prior to the
> arrest did not negate probable cause.  Thus, Defendant
> [Granlund's] failure to investigate [p]laintiff's alibi
> witnesses prior to arrest did not constitute a
> constitutional violation.

Romero, 45 F.3d at 1478 (footnote omitted); see also Thompson,

798 F.2d at 556 ("[H]aving once determined that there is probable

cause to arrest, an officer should not be required to reassess

his probable cause conclusion at every turn, whether faced with

the discovery of some new evidence or a suspect's self-

exonerating explanation from the back of the squad car.").

Plaintiff's federal claims against Defendant Granlund fail

because Defendant Granlund had probable cause to arrest and

therefore plaintiff has suffered no constitutional violation.

Defendant Granlund is entitled to summary judgment on the claims

against him.

The court notes, but need not discuss in detail, that even

if probable cause was found wanting, Defendant Granlund would

still be entitled to qualified immunity.  The qualified immunity

doctrine provides that "government officials performing

discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly

14

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In this case, Defendant Granlund properly applied for, and was issued, a warrant for plaintiff's arrest. "Under Harlow's objective test, the question a court must ask is whether another officer, standing in [Granlund's] shoes and having the same information [Granlund] had, might reasonably have come to the conclusion that he had probable cause to apply for the arrest warrant." Hoffman v. Reali, 973 F.2d 980, 986 (1st Cir. 1992); see also Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985). For all of the foregoing reasons, the court finds that a reasonable officer would come to that very conclusion.

Count III of plaintiff's writ alleges that in arresting plaintiff without probable cause, Defendant Granlund was acting pursuant to customs, usages and common policies of the Defendants Town and Department. A municipality may be subject to civil liability under 42 U.S.C. § 1983 for a deprivation of constitutional rights resulting from "official action taken pursuant to a 'custom or usage' of the municipality." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16 (1st Cir. 1995). However, where there has been no deprivation of constitutional rights by the municipality's agent, there generally can be no liability on the part of the municipality. See Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998) ("Normally, . . . a municipality cannot be held liable unless its agent actually violated the victim's constitutional rights.")

15

Since, as discussed above, Defendant Granlund had probable cause to arrest plaintiff, there is no constitutional deprivation for which to hold either him or the Town or Department liable.

Count III of plaintiff's writ also appears to allege a failure to train theory of § 1983 liability.  To the extent that such a theory requires separate consideration, see Hayden, 134 F.3d at 456 (noting, after disposing of plaintiffs' custom or policy argument, that "[a]lternatively, of course, the Town could be held liable under section 1983 were it to appear that the injury to plaintiffs was caused by the Town's failure to train [the chief of police]"), it too fails because Officer Granlund had probable cause to arrest plaintiff.  Having suffered no constitutional deprivation, plaintiff has no § 1983 claim.  See Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996) (noting that "liability under § 1983 requires not only state action but also an unconstitutional deprivation of rights").[6]  Defendants Town and Department are entitled to summary judgment on Count III.

Having determined that defendants are entitled to prevail as a matter of law on all of plaintiff's federal claims, the court

_____

[6]The First Circuit in Hayden considered the question whether a municipality could be liable in a § 1983 action for a failure to train despite a finding that the municipality's agent had not violated the plaintiff's constitutional rights.  Although expressing considerable doubt, the court assumed, arguendo, that the claim against the municipality could survive dismissal of the claim against the agent.  Hayden, 134 F.3d 449 n.13.  This is not such a case, nor does plaintiff argue that it is.  Here, the only constitutional deprivation plaintiff alleges, i.e., her arrest without probable cause, simply did not occur.  Therefore, all of her § 1983 claims must fail.

16

must now decide whether to exercise supplemental jurisdiction over plaintiff's remaining state law claims.  See Camelio v. American Federation, 137 F.3d 666, 672 (1ˢᵗ Cir. 1998). Plaintiff's writ alleges state law claims of false arrest/illegal seizure/battery; negligent hiring, training and supervision; and vicarious liability against the Town and Department.  Defendants argue that the existence of probable cause to arrest precludes all of plaintiff's state law claims.  If so, remand to the state court would be futile, as plaintiff would be collaterally estopped by this court's determination that probable cause existed.

Where plaintiff's arrest was based on probable cause, and more particularly, on a warrant supported by probable cause, she cannot prevail on her state law false arrest claim.  Cf. Welch v. Bergeron, 115 N.H. 179, 181 (1975) (noting that "[a]n essential element the offense [of false imprisonment] is the absence of valid legal authority for the restraint imposed," and holding that false imprisonment claim was properly dismissed where arrest was made pursuant to a valid complaint); Hickox v. J. B. Morin Agency, 110 N.H. 438, 443 (1970) (holding defendants entitled to directed verdict on false arrest claim where "from the evidence at the trial it appears the arrest was made upon a valid complaint").  Thus, to the extent that Count I of plaintiff's writ, captioned "False Arrest/Illegal Seizure/Battery," is based on state law, the court exercises its supplemental jurisdiction

17

and finds that defendants are entitled to judgment as a matter of law.[7]

Count IV of plaintiff's writ, alleging negligent hiring, training and supervision must also fail because Defendant Granlund had probable cause to arrest plaintiff. See Hartgers v. Town of Plaistow, 141 N.H. 253, 255 (1996) (finding that trial court correctly treated all of plaintiff's claims related to arrest, including claim of negligent failure to train and supervise, as contingent on whether police lacked probable cause, and affirming grant of summary judgment for defendants where probable cause did exist). Similarly, where no underlying tort was committed by Defendant Granlund, plaintiff cannot maintain a claim for vicarious liability against the Town or Department. Accordingly, the court exercises supplemental jurisdiction with respect to Counts IV and V, and grants defendants summary judgment with respect to those claims. Counts VI and VII, are merely claims for enhanced and punitive damages, and are moot given the disposition of plaintiff's substantive claims.

_____

[7]As the battery component of Count I appears to be an integral part of the false arrest and illegal seizure claims, and based solely on the allegations of arrest without probable cause, the court treats it as part of an overall false arrest claim and finds that it too must fail on a determination that probable cause was present. While plaintiff states in her affidavit that at the time of arrest Defendant Granlund "grabbed [her] by the right arm and pushed [her] up against the wall," there is no claim in her writ of use of excessive force and the court does not read Count I's "battery" component to make such a claim.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment (document no. 6) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 12, 1999

cc:   Kenneth D. Murphy, Esq.
      William G. Scott, Esq.