# United States Court of Appeals
## For the First Circuit

No. 20-1099

FRANCIS LANG,

Petitioner, Appellant,

v.

DOUGLAS DeMOURA, Superintendent, MCI Cedar Junction,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Ruth Greenberg for appellant.
Maria Granik, Assistant Attorney General, with whom Maura
Healey, Attorney General of Massachusetts, and Thomas E. Bocian,
Assistant Attorney General, were on brief, for appellee.

September 30, 2021

**KAYATTA**, **Circuit Judge**.  Francis Lang seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his Massachusetts conviction for murder in the first degree.  Lang contends that his trial counsel's failure to investigate Lang's mental health history constituted ineffective assistance of counsel.  The Massachusetts Supreme Judicial Court denied relief, rejecting both Lang's direct appeal and his appeal of the Superior Court's denial of a post-trial motion for a new trial on grounds that Lang had ineffective counsel and that his right to a public trial was violated.  Commonwealth v. Lang, 38 N.E.3d 262, 264 (Mass. 2015).  Lang then presented an ineffective assistance of counsel claim in a federal habeas petition, which the district court denied.  Lang v. Superintendent, MCI-Cedar Junction, No. 16-11898-PBS, 2020 WL 58419 (D. Mass. Jan. 6, 2020).  For the reasons that follow, we affirm the district court's denial of Lang's petition.

## I.

## A.

Over time, Lang has been diagnosed with a variety of psychiatric disorders, including attention deficit hyperactivity, learning disabilities, anxiety, opposition-defiant disorder, bipolar disorder, and frontal network dysfunction.  Medical providers prescribed numerous medications for his bipolar disorder, anxiety, and a seizure disorder.  Neuropsychological

- 2 -

testing shows Lang has impulse control in the "bottom one percent of the bottom one percent of the population."

In early 2005, Lang was released from federal prison, where he had been serving time for unlawful possession of ammunition as a felon. He did not take his medications with him from the prison, nor did he replace them. Twenty-two days later, Lang entered a bar from which he had been banned several years before. Recognizing Lang, the bartender refused to serve him. Lang grew upset and began yelling. A waitress, her boyfriend, and Richard Dever, a Suffolk County Deputy Sheriff, approached Lang. He apologized to the waitress. Someone asked Lang to leave. As Lang began to leave, he threw a beer can, which smashed a glass object at the bar.

Although accounts varied as to what occurred next, there was evidence that a scuffle ensued, involving at least Lang and Dever in a small foyer at the entrance of the bar. One trial witness testified that Dever threw punches at Lang. The fight moved to the sidewalk in front of the bar, where Lang and Dever exchanged punches. Lang took out a pocketknife and stabbed Dever several times, asking "[h]ow do you like that, motherfucker?" and "[h]ow's your motherfucking pretty face now?" Lang left the area, but returned a few minutes later, yelling and looking for his glasses. He then departed and did not return. Several hours

later, the police found him hiding in a basement apartment in a nearby home and arrested him.

Dever died as a result of multiple stab wounds, including three stab wounds to the left side of his chest (one of which perforated his heart) and one stab wound under his arm. He also had three incised wounds on his face, one of which exposed bone. State prosecutors charged Lang with murder in the first degree.

Lang did not testify at trial. He called one eyewitness -- a patron at the bar -- who testified that, before the stabbing, Lang was attacked by four people. Trial counsel argued that Lang had acted in self-defense; in the alternative, trial counsel asserted that Lang's inebriation rendered his killing of Dever "nothing more than voluntary manslaughter." Although Lang mentioned his psychiatric history to trial counsel, the explanation of events Lang gave trial counsel focused on self-defense. Trial counsel did not review Lang's psychiatric history, consult with a mental health expert, or discuss with Lang the possibility of a defense of lack of criminal responsibility. Although trial counsel was familiar with mental health defenses and had utilized those defenses previously on behalf of other clients, he believed that such a defense "was rarely successful and should be raised only as a last resort where no other viable defenses exist." Lang, 38 N.E.3d at 270 (Hines, J., concurring). In short, he did not investigate the possibility that such a

- 4 -

defense might be supported because he regarded it as unhelpful or worse, even if it could be supported. In particular, he regarded any argument predicated on Lang's mental health as undercutting a quite plausible defense of self-defense. Ultimately, however, the claim of self-defense failed; Lang was convicted of first-degree murder on a theory of extreme atrocity or cruelty. Lang, 2020 WL 58419, at *1.

## B.

In a motion for a new trial, Lang argued that trial counsel was ineffective in failing to investigate his mental health history; consequently, he argues, Lang was deprived of (among other things) the ability to make an informed decision regarding whether to pursue a defense of lack of criminal responsibility, as well as the potential use of that information to mitigate a verdict. See Brief for Petitioner at 8, 11-13, Commonwealth v. Lang, 38 N.E.3d 262 (Mass. 2015) (SJC-10405), 2014 MA S. CT. BRIEFS LEXIS 1930. After an evidentiary hearing, the trial court denied Lang's motion. Lang, 38 N.E.3d at 264. The trial court judge concluded that trial counsel ably represented Lang, that insanity verdicts are rare, and that "presenting a defense of lack of criminal responsibility would have undermined or been inconsistent with [a theory of] self-defense and would not have accomplished anything material for the defendant." Id. at 271-72 (Hines, J., concurring).

- 5 -

Lang thereafter pursued and exhausted all avenues for reviewing that decision and his conviction. With some partial success in the form of a finding that trial counsel should have investigated Lang's mental health, id. at 273 (Hines, J., concurring); id. at 276 (Lenk, J., concurring), Lang failed to obtain any relief because the Supreme Judicial Court (SJC) of Massachusetts found that he would have refused to pursue a defense based on a lack of criminal responsibility, id. at 265; id. at 277 (Lenk, J., concurring). The SJC did not explicitly address trial counsel's failure to raise mental impairment as a mitigation defense, but the justices did agree that, "after review of the entire record," there was "no other basis for granting the defendant relief." Id. at 265.

## C.

Lang next challenged his conviction through a federal habeas action under 28 U.S.C. § 2254. The district court denied Lang's petition for habeas relief. Lang, 2020 WL 58419, at *2. "Assuming without deciding that [defense] counsel's failure to investigate constitute[d] deficient performance," the district court concluded it was reasonable for the SJC to decide that the result of the trial would not have been different absent counsel's error and that the SJC's decision passed muster under the

- 6 -

deferential standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Id. at 1-3.

## II.

In this appeal, Lang's claim begins with the assertion that trial counsel provided constitutionally ineffective assistance by failing to investigate Lang's mental capacities. The standard for such federal claims was set by Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a defendant need prove both that counsel's performance was ineffective and that the ineffective assistance caused prejudice.  Id. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").  In order to show prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Porter v. McCollum, 558 U.S. 30, 38-39 (2009) (per curiam) (quoting Strickland, 466 U.S. at 694).  This is a heavy burden.  See Strickland, 466 U.S. at 697; Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (noting that Strickland imposes "a 'highly demanding' and 'heavy burden'" (quoting Williams v. Taylor, 529 U.S. 362, 394 (2000))). Although a petitioner "need not show 'that counsel's deficient conduct more likely than not altered the outcome' of [the] proceeding, he must establish 'a probability

- 7 -

sufficient to undermine confidence in [the] outcome.'" <u>Tevlin</u> v. <u>Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010) (quoting <u>Porter</u>, 558 U.S. at 44).

In this case, the SJC agreed with Lang that, at least under Massachusetts law, trial counsel's failure even to consider an investigation constituted ineffective assistance. <u>Lang</u>, 38 N.E.3d at 273 (Hines, J., concurring). Whether that failure also constituted the degree of neglect sufficient to be deemed ineffective assistance under federal law, we need not decide. Rather, we turn our attention to the question of prejudice. Lang asserts two theories of prejudice: (1) Had counsel duly investigated Lang's mental health, counsel would have presented a defense known in Massachusetts as a lack of criminal responsibility, more customarily known as an insanity defense; and (2) had counsel duly investigated Lang's mental health, counsel would have used that history "to mitigate a verdict of cruelty and atrocity to murder in the second degree, to mitigate murder to manslaughter, or to offer alternative explanation of [Lang's] flight other than consciousness of guilt." We address each theory in turn.

**A.**

As to the first theory of prejudice, the SJC adjudicated the issue on the merits and found it lacking. The three-justice majority concluded that counsel's failure to investigate "did not

- 8 -

create a substantial likelihood of a miscarriage of justice because the defendant 'offered no evidence indicating that he would have agreed to present a lack of criminal responsibility defense at the time of the original trial, and has clearly asserted that he would not present the defense at a new trial,'" which "'prevents him from establishing prejudice as a result of counsel's failure to investigate such a defense.'"  Id. at 265 (quoting Lang, 38 N.E.3d at 278 (Lenk, J., concurring)).[1]  AEDPA allows us to reject this finding only if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In denying Lang's petition for a new trial, both SJC opinions credited record evidence that Lang was not interested in pursuing a mental health defense at any point in time.  Lang, 38 N.E.3d at 275, 275 n.19 (Hines, J., concurring); id. at 278 (Lenk, J., concurring).  This included statements Lang made after trial that he was not interested in pursuing a mental-health-based

_____

[1]  The other two justices concluded that "the failure to investigate did not create a substantial likelihood of a miscarriage of justice in the circumstances of this case because, 'even assuming the availability of a viable lack of criminal responsibility defense, counsel's strategic choice to defend the case solely on a self-defense theory was not manifestly unreasonable.'"  Lang, 38 N.E.3d at 265 (quoting Lang, 38 N.E.3d at 274 (Hines, J., concurring)).

defense that, if successful, would likely have sent him to Bridgewater, a facility that Lang describes as "the state hospital at which defendants who are found not guilty by reason of insanity may be confined." The two-justice SJC concurrence additionally stated that "the defendant expressed no wish or choice on the subject of presenting or forgoing a lack of criminal responsibility defense, and did not attempt to make any decision on the matter." Lang, 38 N.E.3d at 275 (Hines, J., concurring).

Lang argues that he had no authority to instruct trial counsel as to whether to assert a lack of criminal responsibility. But under Massachusetts law, "the decision to present a lack of criminal responsibility defense lies solely with [Lang]." Commonwealth v. Lang, 38 N.E.3d at 278 (citing Commonwealth v. Federici, 696 N.E.2d 111, 114-15 (Mass. 1998)). And relevant federal precedent establishes that counsel may not put on a defense of not guilty by reason of lack of criminal responsibility when a defendant has chosen a defense of actual innocence.[2] See McCoy v. Louisiana, 138 S. Ct. 1500, 1507-12 (2018); see also Schriro v. Landrigan, 550 U.S. 465, 478 (2007) ("[I]t was not objectively unreasonable for th[e state] court to conclude that a defendant who refused to allow the presentation of any mitigating evidence

---

[2] In Massachusetts, a theory of self-defense is considered an assertion of factual innocence. Commonwealth v. Williams, 119 N.E.3d 1171, 1177-78 (Mass. 2019).

could not establish Strickland prejudice based on his counsel's failure to investigate further possible mitigating evidence."). In any event, we need only hold, under AEDPA, that the SJC would hardly have behaved unreasonably in concluding that, given Lang's position, there was no reasonable probability that his trial counsel would have pursued such a defense against his wishes.

Lang further contends that it was error for the state courts to have considered whether he would have raised such a mental health defense at a new trial, because such an affirmation of future trial strategy is not required under Strickland. But the SJC did not mandate that Lang tell the court what he will do in the future. Rather, the SJC permissibly and fairly inferred from the various statements Lang made that he would not have proceeded with a mental health defense, even if trial counsel had investigated his mental health record. Such a finding runs contrary to no clearly established federal law, involves no unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Accordingly, we must defer to it. Id.

**B.**

That leaves Lang's second theory of prejudice -- that had counsel investigated properly he would have used evidence of Lang's mental health with the jury to seek some degree of mitigation. Whether the SJC rejected this claim on the merits is

- 11 -

less clear.  The SJC made no mention of the claim.  On the other hand, it said that "after review of the entire record pursuant to G.L. c.278, § 33E, the Justices agree unanimously that there is no other basis for granting the defendant relief."  Lang, 38 N.E.3d at 265.  Under AEDPA, a broad statement of this sort is ordinarily enough.  See Harrington v. Richter, 562 U.S. 86, 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

We need not resort in this instance to relying on AEDPA's deferential review to adjudicate Lang's second theory of prejudice.  After going through the record, we are convinced that, had counsel been fully informed about Lang's mental health, counsel would have eschewed (and reasonably so) using that history in an attempt to obtain mitigation.

Trial counsel explained that as a matter of strategy, he would not have used the evidence of Lang's mental history, even had he been aware of it.  Lang suggests that we should not consider counsel's explanation of what he would have done had he investigated, because his failure to investigate alone proves ineffective assistance of counsel.  But because the failure to investigate constitutes the alleged dereliction by counsel, we are required to consider what would have happened but for that

dereliction.  And if it turns out that the investigation would not have led to any information that counsel would have used at trial, then his dereliction can hardly have caused prejudice.

Counsel -- and the trial court -- cogently explained why the evidence would not likely have helped Lang and how it could have distracted from or even undercut a decent claim of self-defense.  Commonwealth v. Lang, No. 05-10311 (Mass. Super. Apr. 20, 2012), aff'd 38 N.E.3d 262 (Mass. 2015).  Massachusetts precedent, established before Lang's trial, recognized that "[a]lthough a mental health defense and self-defense would not necessarily have been irreconcilable," in at least some cases, a mental health defense "likely would have had an adverse impact on the claim of self-defense."  Commonwealth v. Walker, 820 N.E.2d 195, 206 (Mass. 2005).  The Superior Court concluded that "[t]o contend . . . that [Lang] was mentally ill and driven by uncontrollable impulses would likely have been fatally inconsistent with the state[-]of[-]mind requirements for self[-]defense," which include "that [the] defendant would have had to actually and reasonably believe that he was in imminent danger of serious bodily harm or death from which he could only save himself by the use of deadly force."  Lang, No. 05-10311 (Mass. Super. Apr. 20, 2012), aff'd 38 N.E.3d 262 (Mass. 2015).

Lang suggests that trial counsel's claim that he would not have used Lang's mental health history had he been aware of it

is inconsistent with counsel's decision to submit at trial evidence of alcohol consumption by Lang on the night in question. But suggesting that Lang's perception and judgment were possibly clouded by alcohol on that particular night is hardly the same as suggesting that Lang is chronically lacking in impulse control. Lang had a pretty strong argument for jurors to find he acted in self-defense. Jurors who might accept that defense by finding that he was pushed beyond the limits of reasonable restraint before using force on the victim might instead decide, based on his mental health history as manifest in criminal conduct and recent imprisonment, that he was prone to strike violently without reasonable provocation, and best not be put back on the streets. In short, as defense counsel explained, the mental health history could have both distracted from and undermined the principal defense, such that there remained no reasonable probability that counsel would try to use it.

Lang also argues that an understanding of his mental health conditions would provide an alternative explanation for his flight after the altercation -- one other than "consciousness of guilt." But given that his flight was entirely consistent with his defense that fear of harm reasonably caused him to strike in self-defense, we see no reasonable probability that Lang's alternative explanation for his flight would have changed the result.

For the foregoing reasons, we find that Lang has failed to establish a reasonable probability that trial counsel would have used the evidence of Lang's mental health had counsel been aware of it.  Hence, the failure to investigate caused Lang no prejudice.

### III.

The decision of the district court denying Lang's petition for a writ of habeas corpus is <u>affirmed</u>.