The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Dale E. CAMPBELL, Defendant–Appellant.

No. 00CA1111.

Colorado Court of Appeals, Div. IV.

Sept. 26, 2002.

Ken Salazar, Attorney General, Lauren Edelstein–Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Dale E. Campbell, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of securities fraud and one count of theft. We reverse and remand for a new trial.

## I. Background

Defendant was charged with several counts of theft and securities fraud related to a scheme in which he promoted a seminar featuring a nationally known motivational speaker. The counts involving one of the victims were severed and tried separately and are the subject of this appeal.

In April 1999, defendant retained counsel who filed several pretrial motions on defendant's behalf. That attorney requested and was granted two continuances of the motions hearing and the trial based on his assertions that he had inadequate time to prepare.

In December 1999, the attorney moved to withdraw based on a conflict of interest. The motion was granted without objection from the prosecutor, and shortly thereafter, defendant retained a second attorney. The court rescheduled the motions hearing for January 31, 2000, and the trial for March 13.

On January 24, a third attorney moved for a continuance of the motions hearing. On January 31, he appeared before the court and explained that he would be taking over defendant's representation because the second attorney had unexpectedly left their law firm. The third attorney did not formally move for a continuance of the trial date at that time, but informed the court there could be a preparation problem and that "if at the motions hearing ... the Court allows the prior transactions in, we are going to need more time [to prepare for trial] because I wasn't attorney of record for any of the other situations and some of them weren't even charged. So there is going to be a lot of investigation before then."

The prosecutor agreed to a continuance of the motions hearing, but objected to changing the trial date, contending defendant had a history of "engineering a conflict ... to get a continuance." The trial court continued the motions hearing to February 23.

On February 23, the third attorney again moved for a continuance of the motions hearing, stating he was unprepared to go forward. The prosecutor strenuously objected, contending it was a delay tactic by defendant. The court denied the motion, proceeded with the hearing, and granted the prosecution's request to introduce evidence of defendant's 1983 theft conviction and his 1995 securities fraud and theft convictions. The court ruled inadmissible other similar transaction evidence.

On March 3, the third attorney moved to withdraw. He informed the court defendant had discharged him three days earlier and "a conflict [had] arisen between himself and [defendant] that [rendered] his appearance in this matter as detrimental to [defendant]."

On the same date, defendant filed a detailed pro se motion requesting an evidentiary hearing to determine whether the third attorney had represented him ineffectively. Defendant alleged, inter alia, that: (1) he had not hired this attorney, but was simply told he was taking over defendant's case after the second attorney abandoned defendant's representation without giving him proper notice; (2) the third attorney was having personal problems including the recent death of a child, and the law firm was experiencing serious problems; (3) the attorney had been absent from his office for an unknown amount of time and failed to return defendant's phone calls; and (4) the attorney had little criminal law experience and was unprepared for the motions hearing. Defendant included with his motion a law directory profile the third attorney had sent to defendant, listing the attorney's "practice areas" as "Civil Litigation; Securities; Bankruptcy; Real Estate; [and] Corporate Collections."

The court held a brief hearing on the same day the motions were filed. The third attorney informed the court that defendant had terminated him and that he could no longer effectively represent defendant based on their lack of communication. After hearing the arguments of counsel and a brief statement by defendant, the court denied counsel's motion to withdraw and defendant's motion for an evidentiary hearing regarding ineffective assistance of counsel. The trial court stated:

> [Defendant] and [the third attorney] appeared here on January 31, sought a continuance of the motions hearing that was set for that day and assured [the court] that [the defense] would be ready for trial on March 13th. And I think it was that

day that [the prosecution] predicted that there would be something like this before the ... trial date. And [defendant has] been back at least once since then for the motions hearing. Nothing was mentioned about [defendant] being dissatisfied [with the third attorney]. As a matter of fact, [the third attorney] succeeded in getting a severance of counts for the trial.... I don't see this as anything other than an effort to delay the trial.

Defendant and the third attorney continued to have difficulties communicating and on March 13, the attorney appeared before the court for trial and again moved to withdraw for the reasons previously stated. Defendant also addressed the court, advising it that he had fired the third attorney and "will have an attorney in this afternoon and will be finishing up on his appearance. [The fourth attorney] asked that I ask the Court for additional time ... based on his entering his appearance."

Because of docket problems, the case was transferred to another district court judge for trial and for resolution of these matters. After being informed of the situation, the trial court denied the motions, stating: "I see you've made that motion before and it's been denied, so I'm not going to reconsider."

The third attorney then asked the court to advise defendant "of what his rights are ... and what is involved in his defense and possibly advise him of his availability to waive counsel." The court engaged in a brief colloquy with defendant during which defendant reiterated that, while he had hired the second attorney, he had not hired the third attorney. He also maintained that the third attorney was unprepared and was a civil attorney. Defendant insisted that he had fired the third attorney and said he had an appointment with another attorney that afternoon.

The third attorney made the following inquiry of the court: "Your Honor, *if he wants to waive counsel,* [do] I ... have to appear [at the trial] and he can represent himself" (emphasis added). The court instructed the

third attorney and defendant to return for trial on March 15.

On March 14, the third attorney filed a motion entitled "Reconsideration of Motion to Withdraw or, in the Alternative, Motion to Continue to Allow New Counsel to Enter His Appearance." In that motion, the third attorney asserted that "[b]ased upon the record to date, *the defendant has waived his right to counsel"* (emphasis added).

On March 15, when the parties and counsel appeared for trial, the court referred to the motion for reconsideration. The third attorney urged the court to reconsider its prior rulings, and advised it that the fourth attorney was willing to enter an appearance for defendant. Defendant also addressed the court personally and requested that the fourth attorney be permitted to represent him after a brief continuance. The prosecutor objected, and the trial court denied the motion to continue after being told the fourth attorney was not ready to proceed on that date.

The court then advised defendant pursuant to *People v. Arguello,* 772 P.2d 87 (Colo. 1989), of the charges against him, of his rights, and of the perils of self-representation. During the advisement, the third attorney took the position that, "if defendant is not cooperative with defense counsel and actually terminates defense counsel and says he's going to have new counsel for trial, in the event that new counsel becomes unavailable for trial, *he's waived his right to counsel"* (emphasis added).

Defendant responded orally to the court's questions, but refused to sign the written advisement form confirming that he waived counsel. Defendant stated: "I would like to go on record protesting signing this advisement at this time based on the fact that I I did not hire this lawyer, once again, and he's not my attorney."

The trial court asked defendant whether he wanted the third attorney to represent him or he wanted to represent himself, stating: "That's your choice in this trial." De-

fendant answered: "My choice is to have [the fourth attorney] ... represent me." The court responded: "That is not an option if [the fourth attorney] won't try the case today. Now, there are two options: One, to go with [the third attorney]; or two, to represent yourself. So what is your choice?"

Defendant stated that he was not qualified to represent himself, that he wanted counsel but the third attorney was ineffective and could not represent him properly, and that he wanted the fourth attorney to represent him. During this colloquy, the third attorney asserted that *"I think by his actions he's waiving counsel"* (emphasis added).

When defendant refused to choose between proceeding to trial with the third attorney and self-representation, the court stated: "If you refuse to make the choice, I'll make the choice.... The only thing I know to do is *you fired [the third attorney], so I'm going to allow him to withdraw, and you can represent yourself"* (emphasis added).

Upon the suggestion of the prosecutor, however, the court offered defendant the option of having the third attorney remain as advisory counsel and permitted defendant to consult privately by telephone with the fourth attorney. After that consultation, defendant proceeded to trial pro se with the third attorney as advisory counsel.

During its case-in-chief, the prosecution presented evidence that defendant had made an investment proposal to the victim concerning a seminar in Phoenix, Arizona, featuring a nationally known motivational speaker.

The victim testified that he invested $5,500 in the scheme, and that defendant told him he could expect profits of approximately $100,000. Defendant also guaranteed a twenty percent return on the investment if the seminar should fail, which defendant assured the victim had never happened. The seminar never occurred, and the victim testified that defendant stated the scheduled speaker was in a car accident. The victim received $1,100 back from defendant, but defendant failed to repay the principal amount invested.

The motivational speaker testified that he was never scheduled to speak in Phoenix and was not in a car accident.

The court also read a stipulation to the jury concerning defendant's 1983 conviction that stated: "[O]n or about April 25, 1983, defendant was convicted in connection with $167,000 defendant received from a client in 1981." No other evidence was admitted concerning this conviction. Defendant did not request a limiting instruction, and the court did not give one.

The two victims of the 1995 offense testified, as did the prosecutor's investigator, about a similar scheme involving motivational seminars. Before these three witnesses testified, the court gave the jury a limiting instruction to which defendant did not object.

The prosecution also presented another witness whom defendant had solicited in 1998 to invest in a similar seminar. This witness testified, over defendant's objection, that defendant had guaranteed a twenty percent return on his investment and had failed to disclose any information concerning his 1983 and 1995 felony convictions. Defendant objected to this testimony, arguing that he was not notified of the prosecution's intent to introduce this misconduct.

## II. Right to Counsel

Defendant contends the trial court denied him his constitutional right to counsel by requiring him to proceed pro se at trial. He maintains that because he did not expressly or impliedly waive his right to counsel or express any desire to proceed pro se, he was entitled to counsel. He further maintains that the trial court erred by making him choose between proceeding pro se or continuing to be represented by the third attorney, who had a conflict of interest with defendant. We agree with defendant that the third attorney created a conflict of interest when he took a legal position regarding the implied waiver of counsel adverse to defendant's interests and that this legal position resulted in demonstrable prejudice to defendant.

## A. Assistance of Conflict–Free Counsel

■ A criminal defendant has a constitutional right to the assistance of counsel, U.S. Const. amend. VI; Colo. Const. art II, § 16, which includes the right to counsel of one's choice, *Tyson v. District Court,* 891 P.2d 984 (Colo.1995), and the right to conflict-free counsel. *People v. Martinez,* 869 P.2d 519 (Colo.1994).

■ The total denial of the right to counsel constitutes structural error and is not subject to harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)(total deprivation of the right to counsel requires automatic reversal); *Anaya v. People,* 764 P.2d 779, 782 (Colo.1988)("Evidence that a defendant was denied [the right to retain counsel of choice] arbitrarily and without adequate reason is sufficient to mandate reversal without a showing of prejudice. Basic trust between counsel and defendant is the cornerstone of the adversary system and effective assistance of counsel.")(quoting *Linton v. Perini,* 656 F.2d 207, 211–12 (6th Cir.1981)).

■ An accused who desires and is financially able to secure counsel of his or her own choice should be afforded a fair opportunity to do so, *Anaya v. People, supra; see Rodriguez v. District Court,* 719 P.2d 699 (Colo.1986), and defendants who retain their own lawyers are entitled to the same protection under the Sixth Amendment as defendants with court-appointed counsel. *See Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291, n. 2 (2002); *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).

## B. Express or Implied Waiver

■ A defendant may expressly or impliedly waive the right to counsel, *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *King v. People,* 728 P.2d 1264 (Colo.1986). However, waiver of the right to counsel must be made voluntarily, knowingly, and intelligently based on the circumstances of each case. *People v. Arguello, supra; see North Carolina v. Butler, supra.* The prosecution bears the burden of establishing the waiver is valid, *Tyson v. District Court, supra,* and the court should indulge every reasonable presumption against finding a waiver. Any doubts should be resolved in favor of the defendant. *People v. Arguello, supra.*

■ Waiver of a constitutional right usually takes the form of an express statement by the defendant, but it may be implied if "the record as a whole ... show[s] that the defendant knowingly and willingly undertook a course of conduct that evinces an unequivocal intent to relinquish or abandon his right to legal representation." *King v. People, supra,* 728 P.2d at 1269. But "there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions." *People v. Arguello, supra,* 772 P.2d at 97.

In *People v. Arguello, supra,* the defendant refused the services of the public defender's office, and the court appointed another attorney to represent him. When the defendant expressed dissatisfaction with this attorney, the trial court substituted another attorney to represent him.

The defendant later asked the court to excuse the second appointed attorney. Before excusing this attorney, the court warned the defendant he needed to proceed with this attorney or would have to represent himself. Several days later on the first scheduled trial date, the defendant informed the court that the second appointed attorney would not represent him, that he did not want to proceed pro se, and that he wanted to plead not guilty by reason of an impaired mental condition. The court postponed the trial date to conduct a competency examination, after which the defendant requested that the second appointed attorney represent him.

However, this attorney filed a motion to withdraw because of an alleged conflict, and the court granted the motion. "A heated exchange followed, with [the defendant] directing a stream of profanity at the judge

which continued for eight pages of the transcript. [The defendant] resisted the sheriff's attempts to subdue him, and the judge held him in contempt." *People v. Arguello, supra,* 772 P.2d at 90. Although the defendant apologized for the outburst, the court denied or ignored the defendant's later requests for counsel.

The supreme court stated:

[The defendant's] conduct taken as a whole—his repeated requests for change of attorneys without good cause, his non-cooperation with his attorneys, his dilatory tactics, and the prolonged verbal abuse he directed at the judge when he was denied a change of counsel—could amount to a "voluntary" waiver of his right to counsel.

*People v. Arguello, supra,* 772 P.2d at 96.

Nevertheless, the supreme court ordered a new trial, concluding the defendant's conduct did *not* constitute a valid implied waiver of his right to counsel because the trial court had failed to warn him adequately of the consequences of his actions and of the dangers and difficulties of representing himself. *People v. Arguello, supra.*

■ Ordinarily, the request for new counsel is not an implied waiver of the right to counsel, although an unreasonable request or a request without good cause may lead to a waiver. *People v. Mossmann,* 17 P.3d 165 (Colo.App.2000). Good cause includes a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict. If the trial court finds good cause does not exist, it can insist that the defendant choose between continued representation by counsel and pro se appearance.

■ The court must give the defendant a clear choice between counsel and a waiver. *People v. Mossmann, supra.* Further, before the court permits a waiver of counsel, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. Califor-*

*nia,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2542, 45 L.Ed.2d 562, 582 (1975).

## C. Waiver of Conflict

■ In addition, an accused may knowingly, intelligently, and voluntarily waive the right to conflict-free counsel. When the trial court is on notice of a conflict, it has a duty to inquire into the propriety of continued representation by current counsel. *People v. Edebohls,* 944 P.2d 552 (Colo.App. 1996); *see also Allen v. District Court,* 184 Colo. 202, 206, 519 P.2d 351, 353 (1974)("Whenever a motion to withdraw is filed on the grounds that a conflict of interest may exist ... the trial judge must conduct a hearing to determine if a conflict of interest ... requires that counsel withdraw.").

Here, the third attorney recognized he had a potential conflict with defendant by March 3, when he moved to withdraw and informed the court "a conflict [had] arisen between himself and [defendant] that [rendered] his appearance in this matter as detrimental to [defendant]." *See People v. Castro,* 657 P.2d 932 (Colo.1983)(counsel has a duty to advise the defendant or the court of the conflict and plainly describe how the conflict may affect his or her effective representation of the defendant; defense counsel should state on the record the potential conflict of interest and advise the court that disclosures as complete as possible have been made to the defendant).

### 1. Duty of Court to Inquire

■ Once the potential conflict of interest between defendant and the third attorney became apparent, the trial court had a duty to inquire into the propriety of continued representation by the attorney, but failed to do so. *Mickens v. Taylor, supra; People v. Edebohls, supra; cf. Allen v. District Court, supra; People v. Mossmann, supra.* Although the trial court had earlier determined the third attorney was providing effective assistance of counsel, the court made no inquiry regarding the third attorney's asserted conflict of interest.

The record also reflects that two days before the trial was to begin, the third attorney asked the court for permission *not* to appear with defendant on the day of trial. Further, on the day before trial and at the commencement of the trial, the third attorney volunteered to the trial court *three times* that defendant had waived his right to counsel. These representations were made by the third attorney despite the fact that defendant had never expressly waived the right to counsel, but had continuously informed the court that he did *not* want to represent himself and that substitute counsel was willing to represent him.

· Nor can defendant be deemed to have forfeited his right to counsel by his actions, as the third attorney urged the court to conclude. Unlike the circumstances in *People v. Arguello, supra,* and *People v. Rocha,* 872 P.2d 1285 (Colo.App.1993), where the defendants engaged in obstreperous behavior, defendant here was consistently respectful of the trial court, and under these circumstances, we do not construe his action in objecting to representation by the third attorney as an implied waiver of counsel.

Because the only arguable waiver of the right to counsel had to be implied, we agree with defendant that the third attorney's repeated assertions to the court that defendant had waived counsel were palpably adverse to his interests, and likely influenced the trial court's conclusion that defendant had waived counsel. As a result of the trial court's ruling, defendant here was forced to choose between the third attorney and proceeding pro se, and ended up without counsel in a felony case. Hence, he suffered significant prejudice from the third attorney's representations to the court. *See Mickens v. Taylor, supra* (although there is no per se rule requiring reversal if trial court fails to inquire into counsel's conflict of interest, reversal *is* required if the defendant shows a conflict of interest that adversely affects counsel's representation); *People ex rel. Peters v. District Court,* 951 P.2d 926, 930 (Colo.1998)("[A]n attorney is obliged to maintain a paramount duty of loyalty to the client."); *People v.*

*Mossmann, supra; People v. Edebohls, supra.*

## 2. Choosing Between Constitutional Rights

■■■ Requiring a defendant to choose between constitutional rights may also create an untenable position because the defendant must exercise one right at the unnecessary expense of another. The Colorado Supreme Court has described such a choice as creating "an intolerable tension between two constitutional rights." *People v. Chavez,* 621 P.2d 1362, 1365 (Colo.1981).

For example, in *Gilbert v. Lockhart,* 930 F.2d 1356 (8th Cir.1991), the defendant was represented by appointed counsel. On the morning of trial, his counsel moved for a continuance, stating he was unprepared because he had not met with the defendant until that morning and the defendant had just given him the name of an alibi witness. After the trial court denied the continuance, the defendant requested new counsel based on current counsel's assertion that he was unprepared. The court denied the request and offered the defendant the option of proceeding pro se or with his counsel. The defendant opted to represent himself and was convicted. On appeal, the court held the defendant's right to counsel was violated because the trial court had given defendant an intolerable choice of proceeding to trial with allegedly unprepared counsel or no counsel at all.

Other jurisdictions also have held that requiring a defendant to proceed pro se after he or she has alleged that current counsel is ineffective, without further inquiry by the court, violates the defendant's right to counsel and necessitates a new trial. *See Wright v. State,* 32 Md.App. 60, 359 A.2d 1 (1976); *Commonwealth v. Cavanaugh,* 371 Mass. 46, 353 N.E.2d 732 (1976); *Privett v. State,* 635 S.W.2d 746 (Tex.App.1982).

In *Commonwealth v. Cavanaugh, supra,* the Supreme Judicial Court of Massachusetts characterized as "unacceptable" a defendant's choice between proceeding pro se and

being represented by allegedly ineffective counsel:

> On the one hand, [the defendant] could proceed to trial represented by counsel who characterized himself as "unprepared"; on the other, [the defendant] could demonstrate his justifiable concern about that state of affairs only by proceeding to trial pro se. To argue that proceeding to trial, with consulting counsel who felt he was not adequately prepared, amounted to a knowing and intelligent waiver is to suggest that a defendant may only reserve his rights on the issue by refusing to go to trial at all, or by remaining entirely silent throughout the trial.

*Commonwealth v. Cavanaugh, supra,* 353 N.E.2d at 737 (footnotes omitted). *But see German v. State,* 268 Ind. 67, 373 N.E.2d 880 (1978)(the defendant's waiver of the right to counsel was valid even though the defendant expressed dissatisfaction with counsel and requested substitution); *People v. Longuemire,* 77 Mich.App. 17, 257 N.W.2d 273 (1977)(same); *State v. Gibson,* 45 Ohio St.2d 366, 345 N.E.2d 399 (1976)(same).

▮ There is a significant relationship between conflicts of interest by counsel and the effective assistance of counsel. *See People v. Kenny,* 30 P.3d 734, 744 (Colo.App.2000)(discussing relationship between conflicts of interest and effective assistance of counsel, and stating that "[I]f trial counsel's ability to represent a defendant is materially limited by his or her own interests, a defendant may be deprived of the right to effective representation of counsel.").

▮ Here, the trial court was faced with a frustrating situation. Defendant was arraigned in February 1999, and a jury trial was set for June 1999. At defendant's request, the trial had been continued twice, to November 1999 and later to January 2000, and the prosecution had not objected to either continuance. The court also had continued the case on its own motion a third time to March 13, 2000. During this time, three different attorneys had represented defendant, and shortly before trial he had expressed his intention to retain a fourth attorney. Thus, we fully comprehend why the court was unwilling to grant defendant another continuance. *See People v. Outlaw,* 998 P.2d 20 (Colo.App.1999)(court has discretion whether to grant the attorney's motion to withdraw, allow a continuance, appoint substitute counsel when a conflict is alleged), *rev'd on other grounds,* 17 P.3d 150 (Colo. 2001); *People v. Rocha, supra.*

Nevertheless, defendant never expressly waived his right to counsel or his right to conflict-free counsel. To the contrary, he repeatedly told the trial court he wanted and needed a lawyer and did not want to represent himself. And, contrary to the contentions of the prosecutor, the frequent changes of counsel cannot fairly be characterized as delay tactics by defendant. The first attorney defendant retained had a conflict of interest and could not proceed, and his second attorney abandoned his representation, leaving it to the third attorney, whom he did not retain.

This case may be contrasted with *People v. Haynie,* 826 P.2d 371 (Colo.App.1991), in which the trial court held several hearings to resolve the defendant's objection to court-appointed counsel. Following one of the hearings, the trial court specifically found the public defender's representation to be competent and further found that the defendant had not established good cause to dismiss the public defender. One week after defendant was given an *Arguello* advisement and a clear choice between proceeding pro se or with the public defender, he informed the court he would "proceed *pro se* with advisory counsel." *People v. Haynie, supra,* 826 P.2d at 375.

Here, however, there was no express waiver by defendant, and we conclude the record does not support an implied waiver.

In summary, while we acknowledge that a vexing set of circumstances confronted the court, we conclude that: (1) defendant did not expressly or impliedly waive his right to counsel or express any desire to proceed pro se, and therefore was entitled to counsel; (2)

the representations made by the third attorney that defendant had implied waived counsel created a conflict of interest that adversely affected his representation of defendant; (3) once the conflict of interest became apparent, the trial court failed to inquire further into the matter; and (4) the trial court gave defendant the unacceptable choice of waiving his right to counsel entirely and proceeding pro se, or waiving the right to conflict-free counsel by having the third attorney represent him.

Accordingly, the trial court's ruling requiring defendant to proceed pro se totally deprived him of his constitutional right to counsel, and he is entitled to a new trial.

Given our resolution of the issue, we need not address defendant's contention that he had inadequate time in which to prepare his defense.

### III. Remaining Issues

Because certain of the remaining issues presented by defendant are likely to arise on remand, we address them here.

### A. Similar Transaction Evidence

Defendant contends the trial court abused its discretion in its pretrial ruling admitting evidence of defendant's 1983 and 1995 convictions and other misconduct evidence. We disagree.

■■■ Initially, we clarify that the trial court ruled on this evidence before the conflict of interest arose between defendant and the third attorney, but after the court had rejected defendant's pro se motion alleging that he had not hired the third attorney and that the third attorney lacked the criminal law experience necessary to represent him effectively.

The trial court found that the third attorney had entered his appearance, that defendant had appeared before the court twice, and "[n]othing was mentioned about [defendant] being dissatisfied [with the third attorney]," and that the third attorney had succeeded in getting a severance of counts for the trial. Thus, the record reflects no ineffective assistance of counsel at the time of the court's pretrial rulings that would require such rulings to be vacated.

At the pretrial hearing, the prosecutor stated two separate grounds for admitting the evidence of defendant's prior convictions: (1) to show "motive, opportunity, intent, preparation, plan, knowledge, lack of mistake and identity pursuant to CRE 404(b)"; and (2) as "direct evidence of [d]efendant's guilt and intent." In support of the second ground, the prosecution argued that defendant's failure to disclose his prior convictions to the victim was a material omission establishing deception, which is an element of theft by deception and securities fraud. See § 18-4-401(1), C.R.S.2002 (defining elements of theft to include "knowingly obtain[ing] or exercis[ing] control over anything of value of another ... by ... deception"); § 11-51-501(1)(b), C.R.S.2002 (defining elements of securities fraud to include "omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading").

■■■ Whether to admit similar transaction evidence is within the discretion of the trial court, and we will not disturb its determination absent an abuse of that discretion. See People v. Rath, 44 P.3d 1033; People v. Vialpando, 954 P.2d 617 (Colo.App.1997). An abuse of discretion occurs only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. People v. Pineda, 40 P.3d 60 (Colo.App.2001).

Evidence of other crimes committed by a defendant is admissible under certain circumstances, as set forth in CRE 404(b). People v. Miller, 890 P.2d 84 (Colo.1995).

CRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ To introduce evidence under CRE 404(b), the prosecution must establish by a preponderance of the evidence that the other crime or act occurred and that the defendant committed it. *People v. Rath, supra; People v. Garner,* 806 P.2d 366 (Colo. 1991). Such evidence is admissible only if: (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance of the evidence does not depend on an intermediate inference that the defendant has a bad character, which would be employed to support a further inference that the defendant acted in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by its prejudicial impact. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■ However, the trial court may properly admit the evidence under another evidentiary theory without complying with the procedural safeguards required by CRE 404(b). *People v. Rivera,* 56 P.3d 1155 (Colo. App. 2002) (holding that in a securities fraud case, the defendant's prior misconduct was admissible because it was information that should have been disclosed to investors).

### 1. The 1983 Conviction

■ Defendant's 1983 conviction was for theft by fraud of money. Although this conviction occurred fifteen years before the acts charged here, it concerned a crime of dishonesty committed against a client.

We perceive no abuse of discretion in the trial court's determination that the evidence was probative of defendant's intent to defraud the victim here. A reasonable investor would have considered such a conviction highly relevant in deciding whether to entrust funds to defendant, and it showed defendant's knowledge of prior misconduct that should have been disclosed to the victim. *See People v. Rivera, supra.*

Nor are we persuaded by defendant's contention that the probative value of the 1983 conviction was substantially outweighed by its prejudicial effect.

### 2. The 1995 Conviction

■ The 1995 conviction for theft and securities fraud resulted from defendant's guilty plea on charges relating to defendant's offering and selling of an investment opportunity in a seminar in Scottsdale, Arizona. That seminar purported to feature the same person who was to speak here. That seminar never took place, and defendant did not return the money to the victims.

The trial court admitted evidence of the 1995 conviction as part of the res gestae "because the [prosecution's] theory is that the defendant should have disclosed [the prior conviction] to [the victim], and [the prosecution is] going to be unable to prove that element of the case if they can't bring in evidence of the conviction and the transaction underlying the conviction." As an additional ground for admitting this evidence, the court found that it satisfied CRE 404(b) and the *Spoto* test because it showed "defendant's mental state or intent, . . . lack of mistake, common plan or scheme and motive." The court further found that "the prejudicial effect of the evidence [did] not outweigh its probative value."

■ Defendant contends evidence concerning the 1995 conviction was not admissible under CRE 404(b) because it did not show a common plan or scheme, but was "pure propensity evidence." However, evidence of a prior conviction does not have to be part of the sequence of events leading to the commission of the crime charged to qualify as evidence of a common plan. *See People v. Collie,* 995 P.2d 765 (Colo.App.1999)(where defendant was charged with theft and conspiracy to commit theft relating to a scheme to defraud homeowners, the court did not abuse its discretion in admitting evidence of a similar theft conviction); *People v. Delgado,* 890 P.2d 141 (Colo.App.1994).

In any event, the evidence of the 1995 conviction also relates to a material fact be-

cause it showed defendant intended to defraud the victim and knew of material information he failed to disclose, which is an element of theft by deception and securities fraud. *See People v. Rivera, supra.*

Such evidence also is logically relevant and its relevance is independent of the intermediate inference of bad character. The two motivational seminar schemes demonstrated a common plan, intent, and knowledge, which are permissible purposes for admitting such evidence under CRE 404(b), and the similarities between the acts underlying the 1995 conviction and the charged acts increase the probative value.

Accordingly, we conclude the trial court did not abuse its discretion in its pretrial ruling allowing the prosecution to introduce this evidence.

### B. Limiting Instruction

On remand, when admitting evidence of other crimes, the trial court should contemporaneously instruct the jury regarding the limited purpose for which the evidence is being received and for which the jury may consider it. The court also should repeat this instruction in the general instructions to the jury at the close of the evidence. *See People v. Garner, supra.*

Although the model jury instructions do not contain an exact instruction addressing similar transaction evidence, they contain a general instruction concerning evidence admissible for a particular purpose. That instruction, CJI–Crim. 2:02 (1983), provides in relevant part:

> Certain evidence may be admitted for a particular purpose only, and for no other.... [The witness'] testimony ... you are about to hear ... is such evidence. It may be used as evidence for the purpose of showing [insert purposes for which it was admitted] and you should consider it as evidence for no other purpose.

Here, the trial court read the following limiting instruction before any witness testified about the 1995 conviction:

> The evidence you are about to hear is admitted for the limited purpose of showing defendant's knowledge, especially knowledge of facts not disclosed to investors, intent, common plan, scheme, or design, *method of practice,* and absence of mistake. You are instructed that you should not consider it for any purposes other than the limited purposes for which it is admitted.

(Emphasis added).

Defendant asserts that the court erred in including "method of practice" because it is not one of the purposes enumerated in CRE 404(b)(stating that evidence of other crimes, wrongs, or acts may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

However, the supreme court has recently clarified that CRE 404(b) "enumerates several examples of reasons for which evidence of other crimes may be admissible," and that "there are numerous other uses to which evidence of criminal acts may be put and those enumerated [in the rule] are neither mutually exclusive nor collectively exhaustive." *People v. Rath, supra,* 44 P.3d at 1038 (quoting 1 Charles T. McCormick, *McCormick on Evidence* § 190, at 659 (John W. Strong, 5th ed.1999)).

Nevertheless, because "method of practice" is analogous to a "common plan, scheme, or design," its inclusion in the instruction was unnecessary. On remand, the better practice would be to omit this language from the limiting instruction.

### C. Securities Fraud Instructions

We next address defendant's contention that the trial court gave the jury faulty instructions defining two elements of securities fraud: investment contract and material fact. We conclude that, on remand, the instructions should be rephrased.

Section 11–51–501(1) pertains to the fraudulent offer, sale, or purchase of a "security,"

which includes "investment contracts." *See* § 11–51–201(17), C.R.S.2002. Under Colorado law, a "security" includes an "investment contract" covered under the Securities Act of 1933. *Feigin v. Digital Interactive Associates, Inc.*, 987 P.2d 876 (Colo.App.1999).

A division of this court recently stated that "[a]n investment contract under the Securities Act of 1933 means a contract, transaction, or scheme by which a person (1) invests his or her money (2) in a common enterprise (3) with the expectation of profits from the efforts of others." *Joseph v. Viatica Management, LLC*, 55 P.3d 264 (Colo.App. 2002). The division in *Viatica Management* explained that "[t]hese third-party efforts must be significant, that is, essential managerial efforts that affect the success or failure of the enterprise."

One means of committing securities fraud is to omit to state a "material fact." Section 11–51–501(1). Although not defined by the statute, the Colorado Supreme Court has stated that "[a] misrepresented or omitted fact is considered material ... if there is a substantial likelihood that a reasonable investor would consider the matter important in making an investment decision." *Goss v. Clutch Exchange, Inc.*, 701 P.2d 33, 36 (Colo. 1985).

Here, the trial court instructed the jury that an " '[i]nvestment contract' means (1) an investment of money; (2) in a common enterprise[;] (3) with the expectation of profit; [ (4) ] based upon the essential managerial efforts of the promoter or of a third party." The court further instructed the jury that a "[m]aterial fact (or omission)" is "a fact that would be of some importance or significance in the decision making process of a reasonable investor, rather than a fact which merely involves a minor or trivial detail."

We do not decide whether these instructions would have required reversal. However, on remand, the trial court should formulate its instructions based upon the standards set forth in *Goss v. Clutch Exchange, Inc., supra*, and *Joseph v. Viatica Management, LLC, supra*.

The judgment is reversed, and the case is remanded for a new trial.

Judge NEY and Judge VOGT concur.